O. H. P. POLK, *et al.*, v. JEHIL ANDERSON.

WRITTEN CONTRACT; *Terms and Conditions; Contemporaneous Parol Contract.* On December 22d 1873, Anderson received of P. and another 203 Texas steers, to be taken care of and fed by him for P. until July 10th 1874, and Anderson was to receive, as compensation therefor, five cents for each pound which each steer should, at the end of that time, weigh over and above eight hundred and fifty pounds. Afterward, and on March 4th 1874, said contract was superseded, as both parties admit, by another contract, under which second contract P. received back all of said steers except 100 head. At the time this second contract was entered into a written instrument was executed by Anderson, which reads as follows: "This agreement, witnesseth, that whereas we have become satisfied we cannot carry out and fulfill our contract made and entered into with P. on the 22d of December 1873, about feeding their cattle, we therefore hereby agree to release to them all but 100 head of heaviest of steers, which we agree to take at 1,000 pounds each and feed according to our original contract at five cents per pound for all they may gain by the first of July next." *Held*, that notwithstanding said written instrument, the plaintiff Anderson might show that P. by a parol contract entered into at the time or before the execution of said written instrument, agreed to pay the plaintiff as compensation for taking care of and feeding said 203 head of steers from December 22d 1873 until March 4th 1874, what was reasonable and right, to-wit, compensation for the admitted gain of the 100 head which Anderson was to keep after March 4th, and reasonable compensation for feeding and taking care of the others, less what P. had already paid him.

*Error from Miami District Court.*

ACTION by *Anderson* as plaintiff to recover a balance alleged to be due him from *Polk* and another on contract. His account as stated in the petition amounted to $2,605, and he admitted payments in the sum of $515; balance

claimed, $2,090. Answer, a general denial, and a counter-claim for damages. The material facts. are stated in the opinion. Trial at the June Term 1874 of the district court. Verdict and judgment in favor of *Anderson* for $1,700, and the defendants bring the case here on error.

*W. R. Wagstaff*, and *V. D. Craig*, for plaintiffs in error:

Anderson claims reasonable compensation for feed and care of cattle. Polks deny, and set up two written contracts, covering the subject-matter in the petition. Anderson in reply admits the execution· of the written contracts. Then there can be no issue as to damages as set up in the petition. The issues for trial to jury are on the new matter in the answer and reply. There can be no issue on the first written contract, because that was mutually adjusted by the parties, as shown by the second contract. The remaining issues of fact arise on the second contract, and the new matter in the third defense, and the new matter set up in the reply. All the evidence proves the written contracts, and none contradicts; all the evidence shows a settlement under the second contract, and none contradicts; all the evidence shows that Anderson commenced feeding the 101 head under the second contract on the 4th of March, and none contradicts; all the evidence shows that the Polks took the 101 head of cattle into custody on the 20th of March, and none contradicts; all the evidence shows that after March 20th, Anderson never expended either time or money in caring for said stock, and none contradicts; all the evidence shows that Anderson had the charge, care and feeding of said stock — 101 head — 16 days and no more; all the evidence shows that before the 20th of March, Anderson sent word to the Polks that he would feed the cattle no more corn than he had on hand, unless Polks would send him more money; all the evidence shows that Anderson had not sufficient feed on hand to provide for said cattle under said contract without making additional purchases; all the evidence shows that the 101 head of cattle, from March 4th to March 20th, had not increased in weight; all the evidence shows that Anderson

by contract was to receive five cents per pound for increase of weight over 1,000 pounds on each steer, and no more. There is no evidence to show the reasonable and probable increase of each steer with proper feed under the contract to March 20th. It seems clear from a general view of the pleadings and the evidence, that the jury, in making up a verdict in the sum of $1,700, disregarded all the issues made up in the case, disregarded the binding obligations of the written contracts, and attempted to and did make up their verdict on the theory of a reasonable compensation as alleged in the petition, not upon issues joined, and in violation of the established rules of the courts of law. 12 Kas. 152; 8 Kas. 497; 12 Am. L. Reg. 442; 12 Ohio St. 360.

The verdict and judgment ought to be set aside and a new trial granted, on the ground of newly-discovered evidence; for misconduct on the part of officers of the court pending the trial; for misconduct and unlawful combinations of witnesses on the part of the defendant in error pending the trial, by which the rights of the plaintiffs in error were prejudiced.

*Simpson & Brayman,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Jehil Anderson against O. H. P. Polk and John W. Polk, for taking care of and feeding 203 head of cattle from December 22d 1873 to March 22d 1874. We do not think that the issues in the court below were what the plaintiffs in error (defendants below) now seem to claim them to have been. The case was certainly not tried in the court below as though such were the issues, but was tried upon a very different theory. By the original contract between Anderson and the Polks, Anderson was to receive as compensation for taking care of and feeding said cattle, from December 22d 1873 until July 10th 1874, five cents for each pound which each steer (for they were all Texas steers) should at the end of that time weigh over and above eight hundred and fifty

pounds. Afterward, and on March 4th 1874, this contract was superseded, as both parties admit, by another contract, under which second contract the Polks received back all of said cattle except 100 head. The Polks claim that said original contract was superseded by a contract *wholly* in writing. Anderson claims that it was not. This issue we think was sufficiently raised by the pleadings; and the whole case was tried in the court below upon the theory that this question was put in issue by the pleadings. It is admitted by the pleadings that at the time said second contract was made the following written instrument was executed, to-wit:

"THIS agreement, signed and delivered this 4th day of March 1874, witnesseth; that whereas, we have become satisfied we cannot carry out and fulfill our contract made and entered into with John W. Polk and O. H. P. Polk on the 22d December 1874 about feeding their cattle, we therefore hereby agree to release to them all but 100 head of heaviest of steers, which we agree to take at 1,000 pounds each, and feed according to our original contract at five cents per pound for all they may gain by the first of July next. Witness our hands.                                    TEMPY ANDERSON.
                                            JEHIL ANDERSON."

The Polks claim that this embodied the whole of the second contract, and that by virtue of it Anderson was to have nothing for feeding said 203 head of cattle from December 22d 1873 to March 4th 1874. Anderson on the contrary claims that this did not embody the whole of said second contract; but by virtue of the terms of said second contract, as it was in fact made, he was to receive as compensation for feeding said cattle from December 22d to March 4th what was reasonable and right, to-wit: he was to receive compensation for the admitted gain of the 100 head which he was to keep after March 4th, and reasonable compensation for feeding and taking care of the others, less what the Polks had already paid him. This, the pleadings as well as the evidence show. But the question arises, could Anderson show this, either by the pleadings or the evidence, after he had admitted the execution of said written instrument? We think he could.

It would not tend to vary or contradict the terms of said written instrument. Said written instrument evidently does not contain the whole of the contract as made by the parties. It does not show what the Polks agreed to do. All that they agreed to do rests wholly in parol. They admit that they agreed to receive the cattle which Anderson released; and to dispense with said original contract; but this is not shown by said written instrument. It rests wholly in parol. And why may not the balance of Polks' agreement, as claimed by Anderson, rest in parol? The written instrument does not pretend to show that Anderson was to receive no compensation for his care and feed furnished to the cattle prior to March 4th. And Anderson claims that the Polks agreed that he should. Besides, it is shown both by the pleadings and Anderson's evidence that Anderson is an illiterate man, that he cannot read, that he relied upon the statements of the Polks, or rather upon the statements of Polks' agents, as to what said written instrument contained, and that, from such statements he believed at the time he authorized his name to be signed to said written instrument that it contained all that he now claims was included in said second contract as it was in fact made by the parties. But, however said written instrument might be construed, still the verdict should have been for Anderson and against the Polks for some amount; for, taking the second contract as the Polks claim that it was, they violated even it. They drove away said 100 head of cattle on March 20th without the consent of Anderson. This substantially disposes of this case in this court. It is wholly unnecessary to discuss the points made, that the verdict is against the evidence, or is excessive, for it is certainly not more so than numerous verdicts which this court has already sustained.

The plaintiffs in error also moved for a new trial because of newly-discovered evidence. Now so far as the newly-discovered evidence was relevant and competent, it was merely cumulative, and we think by the exercise of reasonable diligence it could have been obtained for the trial. The

testimony of Ira Allison would have been merely cumulative. It would have had scarcely any weight in the case, and probably by the exercise of the slightest diligence it could have been procured. It would seem from the evidence that Allison was a half-witted boy; that he came to Paola, and into the court-room, without a subpœna, for the purpose of testifying for the Polks; that some of the witnesses for Anderson, and one of the bailiffs of the court, played what they considered a practical joke upon him, and scared him out of town. Now this conduct may have been reprehensible, but the plaintiff Anderson was not responsible for it. He knew nothing of it till after the trial.

We think there was no error or irregularities in any of the proceedings that would authorize a reversal of the judgment below.

The judgment will therefore be affirmed.

All the Justices concurring.